CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

MAR 0 9 2010

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BOBBY D. SEAY, </br>   Petitioner, | Civil Action No. 7:09CV00361 |
| v. | **MEMORANDUM OPINION** |
| TERRY O'BRIEN </br>   Respondent. | By: Hon. James C. Turk </br> Senior United States District Judge |

Bobby D. Seay, a military prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges his transfer from the United States Disciplinary Barracks (USDB) to the federal Bureau of Prisons (BOP). He argues that the U.S. Parole Commission and the BOP have violated his due process rights, his rights under the equal protection clause of the Fourteenth Amendment, and the *ex post facto* clause of the United States Constitution by applying federal parole and clemency guidelines to him and allowing the U.S. Parole Commission (USPC) to maintain parole authority over him. Petitioner seeks release from incarceration and reentry into the armed forces. The respondent filed a motion to dismiss, and petitioner responded, making the matter ripe for decision. After reviewing the record, the Court finds that the Respondent's motion to dismiss must be **GRANTED**, and Petitioner's request for § 2241 relief must be **DENIED**.

### I. Factual Background and Procedural History

A general court-martial convicted petitioner on August 3, 1999, of conspiracy to commit murder, premeditated murder, larceny, and kidnapping. Petitioner was sentenced to confinement for life and dishonorably discharged. His conviction and sentence were affirmed on appeal by both the United States Army Court of Criminal Appeals and the United States Court of Appeals

for the Armed Forces. Petitioner was originally confined at the USDB at Fort Leavenworth, Kansas. He was transferred to the BOP on June 29, 2005, and is currently confined in the United States Penitentiary in Jonesville, Virginia.

A. **Factual Background**

Petitioner's conviction arose out of his involvement in the stabbing death of a fellow soldier. Petitioner and the victim, along with a third soldier, Sergeant Darrell Shelton, spent an evening together, first at the local army barracks in Colorado Springs, Colorado and then at Petitioner's home. The men drove to a nearby field, where the victim fled the vehicle. Sergeant Shelton chased after him and pinned him to the ground. Petitioner then, at Sergeant Shelton's instruction, stabbed the victim in the neck and ribs. Sergeant Shelton then stabbed the victim, as well. Petitioner and Sergeant Shelton left the victim's body in a field, where the victim's remains were uncovered four months later.

B. **Procedural History**

Petitioner's conviction and sentence were upheld by the United States Army Court of Criminal Appeals. The decision of that court was affirmed by the United States Court of Appeals for the Armed Forces on June 30, 2004; Petitioner's request for consideration of that opinion was denied on August 17, 2004.

On September 17, 2008, Petitioner requested suspension of his Dishonorable Discharge and return to duty on probation. He also requested clemency in the forms of a reduction in the length of his sentence and a restoration to pay grade E-1. Petitioner noted on his request that he had applied to the U.S. Parole Commission for parole, and had appealed their denial. On November 1, 2008, a Disposition Board considered Petitioner for Federal Clemency, and concluded that reenlistment and clemency were not recommended. On November 25, 2008, the

2

Army Clemency Board and Parole Board denied Petitioner's request for clemency and reenlistment.

## II. Legal Standard

Respondent's motion to dismiss must be treated as a motion for summary judgment. Respondent submitted materials outside of the pleadings, including a Memorandum by the Army Clemency and Parole Board, a Disposition Board Recommendation by the Depart of Defense, an Inmate Restoration/Return to Duty, Clemency and Parole Statement, and a BOP Progress Report. When a motion to dismiss is submitted with additional affidavits or documents outside the pleadings, the Court may consider it a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 12(d).[1] In reviewing a motion for summary judgment, the court views the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Nevertheless, the court may look to the affidavits and other specific facts to determine whether there is a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Moreover, it is the substantive law that will identify which facts are material for the purposes of summary judgment. Id. at 248. Ultimately, summary judgment is only proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] The parties received reasonable and explicit notice of the court's intention to convert the United States's motion to dismiss into one for summary judgment. The Clerk of the Court issued a Roseboro Notice on November 17, 2009, explaining that "if documents or affidavits outside the pleadings are submitted by either party, any motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." (Dkt. No. 12).

A Court can entertain petitions for writs of habeas corpus, pursuant to 28 U.S.C. § 2241, filed by prisoners incarcerated by order of a military court-martial. Burns v. Wilson, 346 U.S. 137, 139 (1953). A § 2241 petitioner may seek judicial review of the execution of his sentence by filing a petition for a writ of habeas corpus in the district court with jurisdiction over the facility in which he is confined. He will succeed if he demonstrates that he is confined in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); Rumsfeld v. Padilla, 542 U.S. 426, 447 (2004). However, the power of a district court to grant a writ of habeas corpus is limited to its territorial jurisdiction. 28 U.S.C. § 2241. "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." Id. § 2241(a). A § 2241 petition should name as respondent "the person who has custody over [the prisoner]." Id. § 2242.

### III. Analysis

Petitioner argues that the U.S. Parole Commission and the BOP have violated his due process rights, his rights under the equal protection clause of the Fourteenth Amendment,[2] and the *ex post facto* clause of the United States Constitution by applying federal parole and clemency guidelines to him and allowing the USPC to maintain parole authority over him. The crux of Petitioner's argument is that "actions by the DA, BOP, and USPC have created a void in the law in that § 858(a) no longer covers parole for military prisoners housed in the BOP and § 952(a) does not cover military prisoners outside of military custody, who then have no judicial protections outside of military custody due to lack of statutory authority." (Pet.'s Traverse at 9.)

#### A. Jurisdiction

---

[2] Petitioner has failed to explain how his rights under the equal protection clause have been violated by his transfer or by USPC jurisdiction over his parole release. The Court finds that there is no legal or factual basis for this argument, and that the claim is therefore meritless.

4

Respondent requests dismissal, arguing that the Warden of USP Lee is not the proper respondent. Respondent argues that the proper respondent is the Commandant of the USDB in Fort Leavenworth, Kansas, and that this Court does not have jurisdiction over the Commandant of the USDB. However, a review of the applicable law reveals that respondent's jurisdictional arguments lack merit.

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." Id. § 2241(a). A § 2241 petition should name as respondent "the person who has custody over [the prisoner]." Id. § 2242. See Id. § 2243 ("The writ, . . . shall be directed to the person having custody of the person detained."). As the Supreme Court explained in 1885, "these provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." Wales v. Whitney, 114 U.S. 564, 574 (1885). This "immediate custodian rule" is the default, and is "general[ly] applicab[le] ... to habeas petitions challenging physical custody." Rumsfield, 542 U.S. at 436.

The Supreme Court reaffirmed in Rumsfield the century-old habeas procedure of naming the prisoner's jailer when the prisoner challenges his present physical confinement. The Court reiterated that it has "never intimated that a habeas petitioner could name someone other than his immediate physical custodian as respondent simply because the challenged physical custody does not arise out of a criminal conviction." Id. at 439. The Court further stated that "identification of the party exercising legal control only comes into play when there is no immediate physical custodian with respect to the challenged 'custody.' In challenges to present

5

physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." Id.

Respondent acknowledges that petitioner is "currently, and exclusively, serving a court-martial conviction" but argues that petitioner "is not 'in custody' in Virginia on that sentence, but is simply in custody [in Virginia] pursuant to an interagency agreement between the Army and the BOP." (Mot. Dismiss at 18.) Thus, Respondent concludes, "the Warden U.S.P.-Lee County is not the person who is holding Petitioner in what is alleged to be unlawful custody" because "petitioner is not challenging his present physical confinement at the BOP facility, but is challenging his continued confinement by the Army who controls his presence at the BOP pursuant to his military conviction." Id.

Respondent further alleges that "[t]here is no immediate custodian with respect to Petitioner's challenge of custody pursuant to his court-martial conviction because the BOP has no authority to order Petitioner's release except upon a U.S. Parole Commission grant of parole or the expiration of a term of confinement" Id. at 19. Respondent concludes that, because petitioner can not challenge his present physical confinement, the "proper respondent is the supervisory Army official who exercises legal control and not the immediate custodian at the BOP facility." Id. at 14–15.

The Supreme Court addressed an analogous argument in Rumsfield, stating:

> The Court of Appeals' view that we have relaxed the immediate custodian rule in cases involving prisoners detained for "other than federal criminal violations," and that in such cases the proper respondent is the person exercising the "legal reality of control" over the petitioner, suffers from the same logical flaw. Certainly the statute itself makes no such distinction based on the source of the physical detention. Nor does our case law support a deviation from the immediate custodian rule here. Rather, the cases cited by [respondent] stand for the simple proposition that the immediate physical custodian rule, by its terms, does not apply when a habeas petitioner challenges something other than his present physical confinement.

Rumsfield, 542 U.S. at 437–38 (internal citation omitted). Respondent acknowledges that Petitioner is currently serving a court-martial conviction and is in custody at USP-Lee, located within this district. Although Respondent argues that Petitioner is not challenging his present physical confinement, Respondent does not alternatively identify what other type of confinement petitioner is challenging.

Respondent cites United States v. Moussaoui, 382 F.3d 453, 464–65 (4th Cir.2004); Braden v. 30th Judicial Court, 410 U.S. 484 (1973); and Norris v. Georgia, 522 F.2d 1006, 1006 (4th Cir.1975), in support of his argument. However, Respondent's reliance on Moussaoui is of little value; in that case the United States kept the petitioner in a secret location and his jailer was therefore unknown. Braden is distinguishable because the prisoner in that case challenged his future state custody in Kentucky while he was incarcerated in Alabama. Braden, 410 U.S. at 488–86. See, e.g., Rule 2(b) of the Rules Governing § 2254 Cases (stating proper respondent for future state custody challenges includes the Attorney General of that state). Norris is also distinguishable because there a North Carolina inmate filed a habeas petition in the North Carolina federal court where he was incarcerated to challenge detainers issued by Georgia and Louisiana. Norris, 522 F.2d at 1008. The Fourth Circuit Court of Appeals held that the federal district court in North Carolina could hear the petitioner's claims only with regard to those respondents over which it had *in personam* jurisdiction and could not prevent state executives beyond its jurisdiction from prosecuting. Id. at 1013–14.

Respondent's reliance on these cases is misplaced because petitioner is challenging a military conviction for which he is currently incarcerated within this district. The fact that the Department of Defense placed the petitioner within the physical custody of the Department of Justice in this district creates jurisdiction in this Court to entertain this habeas petition. The

"proper respondent is the person responsible for maintaining—not authorizing—the prisoner's confinement." Rumsfield, 542 U.S. at 440 n.13.

Respondent further argues that "[e]ven if this Court finds that the general rule in *Rumsfield* is applicable, the uniqueness of this situation provides a substantial basis for departing from the 'immediate custodian rule.'" (Mot. Dismiss at 23.) The Supreme Court addressed the same argument:

> The dissent contends that even if we do not indulge its hypothetical scenario, the Court has made "numerous exceptions" to the immediate custodian and district of confinement rules, . . . Yet the dissent [nor the respondent] cannot cite a *single case* in which we have deviated from the longstanding rule we reaffirm today— that is, a case in which we allowed a habeas petitioner challenging his present physical custody within the United States to name as respondent someone other than the immediate custodian and to file somewhere other than the district of confinement. If Justice Stevens' view were accepted, district courts would be consigned to making ad hoc determinations as to whether the circumstances of a given case are "exceptional," "special," or "unusual" enough to require departure from the jurisdictional rules this Court has consistently applied. We do not think Congress intended such a result.

Rumsfield, 542 U.S. at 449–50. Respondent relies on Word v. North Carolina, 406 F.2d 352, 353 (4th Cir. 1969), in support of creating an exception, but that case involved a state prisoner attacking a conviction from the non-custodial state which resulted in a detainer filed with his jailer in the custodial state. The federalism and comity issues involved between the three sovereigns in Word are distinguishable from the present case where the only executive involved is the President of the United States whose agents sentenced petitioner, transferred him to this district, and currently confine him in this district. Respondent's reliance on Demjanjuk v. Meese, 784 F.2d 1114 (D.C. Cir. 1986), is, in the Supreme Court's words, "similarly unhelpful" because

8

the United States held the prisoner in an undisclosed location, akin to Moussaoui.[3] Rumsfield, 542 U.S. at 450 n.18. Accordingly, the Court finds that Respondent's jurisdiction arguments are meritless and that it has authority over the instant petition because Petitioner is challenging his publicly-known, present physical confinement within this district.

### B. Failure to exhaust

Respondent requests dismissal, arguing that Petitioner has failed to raise his claims before the military courts. Petitioner was convicted by a general court-martial and sentenced on August 3, 1999. His conviction was upheld by the Army Court of Criminal Appeals. On June 30, 2004, the United States Court of Appeals for the Armed Forces affirmed Petitioner's conviction. Respondent argues that because Petitioner failed to raise the claims at issue here during any stage of his military court proceedings, the claims are waived. Respondent claims that "[i]f an issue was not raised in the military court, then a federal civil court must deem the ground waived." (Mot. Dismiss at 25.) To support this argument, Respondent cites to Watson v. McCotter, 782 F.2d 143, which states:

> We will entertain military prisoners' claims if they were raised in the military courts and those courts refused to consider them. We will not review petitioners' claims on the merits if they were not raised at all in the military courts. When an issue is briefed and argued before a military board of review, we have held that the military tribunal has given the claim fair consideration, even though its opinion summarily disposed of the issue with the mere statement that it did not consider the issue meritorious or requiring discussion.

---

[3] The "overseas" exception obviously does not apply because Petitioner is not held outside the territorial jurisdiction of any district court. See, e.g., Braden, 410 U.S. at 498 (discussing "overseas" exception).

Watson v. McCotter, 782 F.2d 143, 145 (10th Cir. 1986) (citations omitted). Respondent includes a copy of the appeal decision to show that Petitioner failed to raise the constitutional claims at issue here in the military court. (Mot. Dismiss Attach. 2.) However, a review of the applicable law and the facts in this case reveal that Respondent's exhaustion argument lacks merit.

A § 2241 claim does not statutorily require exhaustion of remedies. In this case, Petitioner was transferred out of USDB confinement and into BOP custody in March of 2005. The claims in his instant Petition all relate to this transfer. Specifically, Petitioner is challenging the constitutionality of the USPC maintaining jurisdiction over his parole release date and applying federal parole and clemency guidelines to him rather than military guidelines. Petitioner is not challenging his conviction itself or any aspect of his military trial; rather, he is challenging his current confinement in the BOP and the jurisdiction and decision of the U.S. Parole Commission. These were not issues that could have been raised during the military court proceedings. Because Petitioner is challenging his 2005 transfer to the BOP and jurisdiction over his parole release by the USPC, he would have been unable to raise this claim at his trial, which happened in 2000, or in his appeals, which happened in 2004. Petitioner brings his claims under 28 U.S.C. § 2241. "A petition under 28 U.S.C. § 2241 is limited to those claims challenging the validity of an individual's detention and execution of the current sentence. Where a petitioner challenges the effect of events <u>subsequent</u> to his sentence on that sentence, a 28 U.S.C. § 2241 is an appropriate remedy." Dunkley v. Hamidullah, 2007 WL 2572256 (D.S.C. 2007) (emphasis added).[4] Because Petitioner was unable to raise his claims on appeal,

---

[4] The Court notes that Petitioner appealed his initial parole denial to the USPC. Petitioner is not, however, challenging the USPC's decision to deny him release on parole. Because

10

Respondent's argument that the claims should be dismissed for Petitioner's failure to raise the claims before the military courts is without merit.

## C. Abuse of Writ

Respondent argues that the Court should dismiss the Petition as an abuse of the writ because Petitioner raised the instant claims in prior habeas proceedings. Respondent has provided no evidence to show that Petitioner has filed previous habeas petitions. Consequently, this argument is rejected.

## D. Petitioner's claims are meritless

Finally, Respondent argues that Petitioner's claims are without merit and that his petition should therefore be dismissed. Respondent claims that the petition lacks merit "because the system of parole for military prisoners lawfully establishes that he receives clemency consideration by the military and parole consideration by the BOP." (Mot. Dismiss at 25.)

### i. There is a Statutory Basis for Petitioner's Transfer and USPC Jurisdiction

Congress has clearly stated that military prisoners may be transferred to the BOP. Authorization to transfer military prisoners to the jurisdiction of the BOP is outlined in 10 U.S.C. § 858(a), which provides that:

> Under such instructions as the Secretary concerned may prescribe, a sentence of confinement adjudged by a court-martial or other military tribunal, whether or not the sentence includes discharge or dismissal, and whether or not the discharge or dismissal has been executed, may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use.

---

Petitioner is not challenging as unconstitutional the way the parole guidelines, but instead argues that it is unconstitutional for the USPC to maintain jurisdiction over his parole release and to use federal parole guidelines in making a release determination, a § 2241 petition is the appropriate avenue for relief.

11

10 U.S.C. § 858(a). Furthermore, this statue specifically mandates that military prisoners who are transferred to BOP facilities must be treated the same as non-military prisoners incarcerated in the same facility:

> Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated.

Id. Courts have interpreted this language to mean that military prisoners confined in federal prison facilities are subject to BOP rules, including the rules concerning parole consideration. See Artis v. U.S. Dep't of Justice, et al., 166 F. Supp. 2d 126, 130 (D.N.J. 2001) ("Military prisoners who are confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons sentenced by the Courts of the United States."); Stewart v. U.S. Bd. of Parole, 285 F.2d 421, 421–22 (10th Cir. 1960), *cert. denied*, 365 U.S. 862 (1961) ("It has been consistently held that a military prisoner who is committed to the service of his sentence in a federal penitentiary 'automatically becomes entitled to any advantages and subject to any disadvantages which accrue to the civilian prisoner.'") (citing Fitch v. Hiatt, 38 F. Supp. 388, 390 (D. Pa. 1942)); Romey v. Vanyur, 9 F. Supp. 2d 565, 571–72 (E.D.N.C. 1998) ("If a military prisoner is confined in a civilian institution, that prisoner "shall be subject to the same discipline and treatment as persons confined or committed by the courts of the United States." Courts have interpreted this phrase to mean that military prisoners in Bureau of Prisons facilities are governed by BOP rules, not military regulations."). It is clear that Congress has not only allowed military prisoners to be transferred to BOP facilities, but has mandated that these prisoners be treated like all other

prisoners in BOP facilities and be subject to the same rules, including those relating to parole consideration.

### ii. The Army Clemency and Parole Board Retains Clemency Jurisdiction

Petitioner's claim that the BOP or the USPC is unconstitutionally applying federal clemency guidelines to him, rather than military guidelines, is meritless. Although he has been transferred to a federal civilian facility, the Army Clemency and Parole Board maintains jurisdiction over Petitioner for purposes of clemency. The Memorandum of Agreement between the Department of Army and the Federal Bureau of Prisons that covers the transfer of military prisoners to the BOP is explicit that the Department of Army retains clemency jurisdiction over former military prisoners housed in BOP facilities, while the USPC obtains parole authority over the prisoners. The Agreement states: "The Secretaries of the respective Services retain clemency authority for military prisoners in [Federal] BOP custody. Parole approval for military prisoners in custody of the [Federal] BOP rests with the U.S. Parole Commission. In the absence of the U.S. Parole Commission, the Secretaries of the Services will assume parole approval authority." Dep't of the Army, *Memorandum of Agreement between the Department of Army and the Federal Bureau of Prisons* at 3 (May 27, 1994). In fact, the Army Clemency and Parole Board considered and denied Petitioner's request for clemency in 2008. (Mot. Dismiss Attachs. 8 & 9.) Therefore, Petitioner's claim that the BOP or USPC is unconstitutionally applying federal clemency guidelines to him is meritless.

### iii. USPC Jurisdiction is Proper

Petitioner's claim that the USPC's jurisdiction over his parole release violates his right to due process is without merit. In his response to Respondent's Motion to Dismiss, Petitioner argues that he is entitled to annual parole consideration, and points to Army Regulation 15-130,

which contains rules guiding Department of Army clemency and parole decisions. Specifically, Petitioner argues that AR 15-130 § 3-1(b)(2)–(5) provides that military prisoners are entitled to annual parole consideration. Petitioner is correct that AR 15-130 allows for annual clemency consideration once a prisoner with a life sentence has served five years and for annual parole consideration once a prisoner with a life sentence has served ten years. See Army Regulation 15-130, *Army Clemency and Parole Board*, Ch. 3 § 3-1(d)(4), (e)(1)(*c*) (Oct. 23, 1998). However, AR 15-130 further states that "[p]risoners transferred to Federal facilities are under the control of the U.S. Parole Commission, unless otherwise designated in writing. As such, Federal and Commission policies and procedures apply, not those of this regulation." Id. § 3-1(e)(9). Therefore, the provisions of AR 15-130 that grant annual parole and clemency consideration to military prisoners do not apply when, as in this case, a prisoner has been transferred to a BOP facility.

Petitioner has no liberty interest in parole. AR 150 § 2-2(c) specifically states that "[t]here is no right to clemency, parole, or restoration." Id. § 2-2(c). Courts have found that this language means that military prisoners do not have a liberty interest in parole, and thus do not have procedural due process rights that attach when parole consideration timelines are adjusted. See, e.g., Artis v. U.S. Dep't of Justice, 166 F. Supp. 2d 126, 131 (D.N.J. 2001) ("[T]o the extent that Petitioner is alleging a procedural due process right to the procedures of the military parole scheme, his claim fails because Petitioner does not have any liberty interest in parole under the military parole system."); Greenholtz v. Inmates of Neb. Penal & Corr. Complex et al., 442 U.S. 1, 7 (1979) (finding that there is no constitutional right to parole). Therefore, because Petitioner is not entitled to annual parole consideration according to Department of Army regulations, and does not have a liberty interest in parole, he has suffered no due process violation.

In further support of his claim that he is being denied due process, Petitioner argues that military prisoners are expressly exempted from the jurisdiction of the USPC. Petitioner points to 18 U.S.C. § 3551, which states that:

> Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute, including sections 13 and 1153 of this title, other than an Act of Congress applicable exclusively in the District of Columbia or the Uniform Code of Military Justice, shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553 (a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551(a). Petitioner's argument is meritless. This statute does not apply to Petitioner. Petitioner was charged, convicted, and sentenced pursuant to the Uniform Code of Military Justice; 18 U.S.C. § 3551 therefore does not apply to him.

Petitioner also points to U.S. Department of Corrections Regulation 600-1 to support his claim that subjecting him to the jurisdiction of the USPC violates his due process rights. This regulation, however, does not apply to Petitioner. The regulation states that "[t]he Federal Parole Commission has no jurisdiction over military parolees." USDC reg. 600-1 (May 1, 1995). Petitioner is not a parolee—he has not been released on parole, but remains incarcerated.

Petitioner also claims that his current confinement in the BOP and jurisdiction over him by the USPC are unconstitutional violations of the *ex post facto* clause. Petitioner's claim is meritless. The United States Constitution bars Congress from passing *ex post facto* laws. U.S. CONST. art. I, § 9, cl. 3 ("No . . . ex post facto law shall be passed."). According to the Supreme Court, "any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time

15

when the act was committed, is prohibited as ex post facto." Beazell v. Ohio, 269 U.S. 167, 169–70 (1925). Petitioner's claims failure to meet this standard.

Application of the U.S. Parole Commission guidelines has failed to increase Petitioner's punishment. Petitioner was sentenced to incarceration for life; transfer to a BOP facility did not (and, practically speaking, cannot) increase this sentence. Petitioner has not demonstrated that he would have been granted release on parole had he remained in the custody of the Department of Army. He has demonstrated neither an expectation of parole, nor an entitlement to it. The Supreme Court has stated that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7.

Petitioner also argues that the change in frequency of parole consideration once he was transferred to the BOP, violates the *ex post facto* clause.[5] A change in frequency of parole consideration, however, does not increase the punishment that Petitioner received, and therefore does not violate the *ex post facto* clause. See Cal. Dep't of Corrs. v. Morales, 514 U.S. 499, 513 (1995) (finding that a change in timing of parole suitability hearings does not increase the punishment imposed on a prisoner and therefore does not violate the *ex post facto* clause); Artis v. U.S. Dep't Justice, 166 F. Supp. 2d 126, 132–33 (D.N.J. 2001) ("Although changing a prisoner's parole eligibility date may violate the ex post facto clause, changing how frequently an already eligible prisoner receives hearings does not. Morales, 514 U.S. at 513, 115 S.Ct. 1597. Thus, when Petitioner was transferred from military custody at Fort Leavenworth to federal

---

[5] Petitioner claims that he will be reconsidered for parole fifteen years from his April, 2008 parole release denial by the USPC, rather than being reconsidered annually by the Army Clemency and Parole Board.

16

custody in New Jersey, the *frequency* of his parole hearings decreased because federal parole rules applied to him, but this did not constitute a violation of the ex post facto clause.").[6]

## IV. Conclusion

Petitioner has failed to show that his transfer to the BOP and USPC jurisdiction over him are unconstitutional. He has failed to show that his transfer to USPC jurisdiction from DA jurisdiction for the purpose of parole consideration violates his right to due process. He has failed to show that this change in his parole jurisdiction violates the *ex post facto* prohibition in the constitution. Even evaluated under the standard for summary judgment, Petitioner has not alleged facts that demonstrate that there is a genuine issue of material facts requiring trial.

For the stated reasons, the Respondent's Motion to Dismiss (Dkt. No. 11) is **GRANTED** and Petitioner's 28 U.S.C. § 2241 Petition (Dkt. No.1 ) is **DENIED**. An appropriate order shall issue this day.

Petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability pursuant to § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Based upon the court's finding that the defendant has not made the requisite showing of denial of a substantial right, a certificate of appealability is **DENIED**. If Petitioner intends to appeal and seek a certificate of appealability

---

[6] Petitioner's parole eligibility date has not been extended in this case. According to Army Regulations, a prisoner who is serving a life sentence is eligible for parole consideration once he has served ten years of his sentence. Army Regulation 15-130, *Army Clemency and Parole Board*, Ch. 3 § 3-1 (e)(1)(*c*) (Oct. 23, 1998). Petitioner was convicted on August 3, 1999, and had been considered for parole by the USPC when he filed his clemency request on September 17, 2008. (Mot. Dismiss Attach. 10.)

17

from the Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of the final order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to the petitioner and counsel of record for the respondent.

ENTER: This 9th day of March, 2010.

/s/ James C. Turk
Senior United States District Judge